IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CR3128 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MARK R. SCHNEIDER, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

Following the hearing in this matter on May 27, 2005 I held
the record open to permit supplementation with any report of
psychiatric examination.  No such report was created by the
Federal Medical Center.   No party has requested that the hearing
be reopened for additional evidence.  Therefore, as the record
now stands, the only evidence before me is Dr. Low's report.

Both the prosecutor and the defendant's attorney rely
heavily on the report's contents in their written submissions on
the defendant's competence to stand trial.  The report's
conclusion is that the defendant is competent, and while
obviously that conclusion is not accepted by defense counsel,
some of the testing and other observations reported in the body
of the report are argued to support the opposite conclusion.

"A defendant is competent to be tried if he has
'sufficient present ability to consult with his lawyer
with a reasonable degree of rational understanding' and
'a rational as well as factual understanding of the
proceedings against him.'"  Wise v. Bowersox, 136 F.3d
1197, 1202 (8th Cir.) (internal footnote omitted)
(quoting Dusky v. United States, 362 U.S. 402, 402, 80

S.Ct. 788, 4 L.Ed.2d 824 (1960)), cert. denied, 525 U.S. 1026, 119 S.Ct. 560, 142 L.Ed.2d 466 (1998).  The conviction of an incompetent person is a violation of due process.  United States v. Hinton, 218 F.3d 910, 912 (8th Cir.2000); see also Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").  In determining competency, the district court may rely on numerous factors, including expert medical opinions and the court's observation of the defendant's demeanor.  United States v. Long Crow, 37 F.3d 1319, 1325 (8th Cir.1994), cert. denied, 513 U.S. 1180, 115 S.Ct. 1167, 130 L.Ed.2d 1122 (1995).  Low intelligence or a mental deficiency does not render a defendant incompetent *per se*.  Vogt v. United States, 88 F.3d 587, 591 (8th Cir.1996); see also Miles v. Dorsey, 61 F.3d 1459, 1472 (10th Cir.1995)  ("The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to ... assist in his own defense.") (internal quotations omitted), cert. denied, 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996).

U.S. v. Robinson, 253 F.3d 1065, 1067-1068 (8th Cir. 2001) (District court did not err in failing to, *sua sponte*, order a third mental competency hearing after having observed the defendant during two trial days, when court was not apprised of any change in defendant's condition and none was apparent).

The Eighth Circuit has adopted the test language "sufficient doubt" of a defendant's competency in order to trigger the trial court's obligation to hold a hearing, *sua sponte* if not requested by one of the parties, to determine competency.  "Sufficient doubt," however, has not been clearly defined:

While the Supreme Court has not described the precise quantum of proof necessary to establish sufficient doubt, it has indicated that the trial court should consider (1)

2

> evidence of irrational behavior by the accused, (2) the
> accused's demeanor at trial, and (3) any prior medical
> opinion as to the mental competency of the accused to
> stand trial.   Branscomb [v. Norris], 47 F.3d at 261 ;
> Griffin [v. Lockhart], 935 F.2d at 930; Speedy [v.
> Wyrick], 702 F.2d at 727.  Additionally, the trial court
> may consider an express doubt by the accused's attorney,
> although such doubt alone is not enough to establish
> sufficient doubt.  Branscomb, 47 F.3d at 261; Griffin,
> 935 F.2d at 930.

Reynolds v. Norris, 86 F.3d 796, 800 (8th Cir. 1996); see also,
Weisberg v. State of Minn., 29 F.3d 1271, 1276 (8th Cir. 1994);
United States v. Day, 949 F.2d 973, 981 & n. 8 (8th Cir.1991), on
remand, 998 F.2d 622, 627 (8th Cir.1993), cert. denied, 511 U.S.
1130, 114 S.Ct. 2140, 128 L.Ed.2d 868 (1994).  "Absent some
contrary indication, state and federal trial judges are entitled
to presume that defendants are competent."  Day, 949 F.2d at 982.
The footnote to that passage reads:

> This presumption recognizes that most persons are
> competent.  Cases in which a defendant must not be so
> regarded are departures from the usual course of criminal
> proceedings; some showing must be made that the
> circumstances of a particular case should have engaged
> the trial judge's attention before he or she can be
> faulted for failing to inquire as to the defendant's
> competency.  See Collins v. Housewright, 664 F.2d 181,
> 183 n. 6 (8th Cir.1981) (per curiam) (quoting Reese v.
> Wainwright, 600 F.2d 1085, 1093 (5th Cir.), cert. denied,
> 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979))
> (stating one "cannot fault a trial judge for failing to
> determine a question that he has no reason to believe is
> in issue"), cert. denied, 455 U.S. 1004, 102 S.Ct. 1639,
> 71 L.Ed.2d 872 (1982).

Day, 949 F.2d at 982, n.10.

    In this case the only evidence before the court is the
report of the forensic evaluation by the Federal Detention
Center.  Although the parties were given the opportunity to

3

present additional evidence, the only request was to hold the
record open to accept a report of any psychiatric examination
that may have been conducted at the Detention Center.  None was,
and so the record consists of only the report authored by Dr.
Cynthia A. Low, Ph.D., a forensic psychologist.  No request has
been made by either side to reopen the hearing for additional
evidence.  I must weigh the evidence to determine "whether he has
sufficient present ability to consult with his laywer with a
reasonable degree of rational understanding--and whether he has a
rational as well as factual understanding of the proceedings
against him."  Dusky v. United States, 362 U.S. 402 (1960)).

     Dr. Low's report describes an exhaustive number of tests
administered to the defendant and observations of him, plus
information obtained from other sources.  The evaluation also
included review of legal, medical, and mental health records,
telephone interviews with mental health professionals, and with
defendant's mother.   As noted above, defendant was not seen or
evaluated by a psychiatrist while at the Detention Center.

     Of special significance are the results of the testing of
the defendant's "effort" in taking the tests.  The report
describes defendant's scores on the principal tests, and also his
scores on the portions of them geared to determine if he was
attempting to make himself look worse so as to be found
incompetent to stand trial.  The report concludes at several
points that indeed, he was.[1]  Based in part on this conclusion,

---

[1] For example, "...[E]ven when taking into consideration the
defendant's low scores on the intelligence test, his performance
on the memory test was even worse than anticipated."  P. 11.
"Predicted scores in [the] area of immediate and general memory
also indicated the defendant is performing much worse than
expected...." P. 11.  "These scores [on the WMT, a test to assess

4

the report finds defendant competent to stand trial, because
despite his memory loss, he was able to recognize the name of his
attorney, could describe in a limited way the role of his
attorney, as well as those of the judge, jury, and prosecutor,
could "with repeated teaching" understand the nature of the
charges pending against him, understood what a plea bargain was,
and had a rational understanding of courtroom proceedings.
Filing 34, p.  14.

    Of considerable concern is the report's description of the
defendant's ability to assist his counsel in mounting a defense.
The report concludes, in this respect,

> When Mr. Schneider was queried about his version of the
> charges, and his life circumstances at the time, he was
> unable or unwilling to provide any meaningful
> information.  His charge spans a time frame of 4 1/2
> years, from November 1999 to June 2004.  The defendant
> recalled using methamphetamine, and obtaining some of it

possible exaggeration of memory deficits] were two to three
standard deviations less than those obtained by patients with
mild or moderate to severe brain injury.  These results seriously
question the amount of effort the defendant exerted during the
testing."  P. 12.  After reciting the defendant's scores on the
MACT test, which measures a person's "poor effort" or "false
positive" results, the report says, "The defendant's severity of
traumatic brain injury does not cause this level of impairment,
as his scores were again much worse when compared to samples of
patients with traumatic brain injury.  He performed similarly to
samples of simulators and dementia.  In summary, testing results
indicated poor effort."  P. 12.  In explaining the "malingering"
diagnosis, the report says, "Although Mr. Schneider does indeed
appear to have true memory deficits, results from testing
indicated he was not putting forth adequate effort during memory
testing.  He scored much worse in various areas of memory than
individuals who suffer from mild to severe traumatic brain
injury.  It is thus determined that he is exaggerating his memory
deficits, most probably due to his legal circumstances.  It is
also difficult to assess his level of true memory abilities due
to the exaggeration."  P. 13-14.

from his codefendnat.  However, he claimed he could not
recall any specific information.  One might therefore
determine that Mr. Schneider's memory deficits are at a
level at which he is unable to assist his attorney.
However, because it was determined through specific
psychological tests of effort that he is exaggerating his
memory deficits, it is believed that Mr. Schneider may,
indeed, be able to provide relevant information to his
attorney.  Again, he scored significantly worse on these
tests of effort than individuals with mild to severe
traumatic brain injury, and similarly to individuals
asked to fake memory impairment.

Filing 34, p. 15.

     The "malingering" diagnosis is also disconcerting, as it
must inherently rely on subjective actions by the defendant and
at least to some extent on subjective inferences by the examiner.
The fact that the defendant was administered several tests which
were aimed at determining whether he was exaggerating his symtoms
discloses that the "malingering" possibility was detected and
thought to be serious enough to require those tests, probably in
an attempt to "rule out" malingering.  In other words, the
examiner recognized that a finding of malingering could not be
based on only her suspicions, and took the extra step of
attempting to objectively determine if her suspicions were
correct.  The tests obviously did not rule out malingering, and
so the conclusion was made that defendant was malingering by
exaggerating his memory deficits.  While possibly someone else
with Dr. Low's credentials and experience might have taken
different actions or even reached different conclusions from the
same data that Dr. Low assembled, there is no objective reason to
doubt her conclusions, and I accept them.

     IT THEREFORE HEREBY IS ORDERED,

     1.  The defendant is found competent to stand trial.

6

2.   Trial, as to both defendants, is set to commence at 9:00 a.m. on August 8, 2005 before Hon. Richard G. Kopf.   Jury selection will be held at commencement of trial.   Trial is scheduled for a duration of four trial days.


DATED June 23, 2005


BY THE COURT


s/ David L. Piester
United States Magistrate Judge